UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL RAY CANTU,<br><br>               Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | Case No. 1:26-cv-00489-KES-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE REVERSED, IN PART<br><br>(ECF Nos. 1, 12).<br><br>FOURTEEN (14) DAY DEADLINE |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for disability insurance and supplemental security income benefits. (AR. 192-207); *see* 28 U.S.C. § 636(b)(1)(B) (providing for issuance of proposed findings of fact and recommendations); Local Rule 302(c)(15) (referring final social security decisions for findings and recommendations).

Plaintiff argues as follows:

Where Plaintiff's diagnostic tests confirm spinal nerve impingement, the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's symptom statements.

1

Where the ALJ's findings did not accurately reflect the medical record, she erred in evaluating the medical opinion evidence.

(ECF No. 12, pp. 9, 15) (emphasis omitted).

Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court recommends as follows.

## I.    ANALYSIS

### A.    Subjective Complaints

Plaintiff first argues that the ALJ failed to offer specific, clear and convincing reasons to reject her subjective complaints. (ECF No. 12, p. 16). Defendant argues that the ALJ's reasoning was sufficient to discount Plaintiff's subjective complaints. (ECF No. 13, p. 6). Plaintiff's reply maintains her argument that the ALJ's reasoning was insufficient. (ECF No. 14, p. 2).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard.").

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 69). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

Here, the ALJ summarized Plaintiff's subjective complaints and reasons for discounting them as follows:

> The undersigned considered all of the claimant's subjective complaints, including the subjective complaints from the hearing testimony and written submissions (Ex. 4E and Testimony). The claimant reported symptoms arising from his physical impairments primarily limited the claimant's ability to work. Specifically, the claimant asserted that the impairments caused symptoms such as chronic pain which restricts his activities and ability to think and concentrate, back strain/pain, neck strain/pain, diabetes, difficulty standing or walking and sitting for prolonged periods, unable to lift heavy objects, pain and difficulty with use of the upper extremities, unable to perform strenuous activities, and unable to function appropriately. The claimant further suggested that difficulty with these impairments limited the claimant's ability to work and perform activities of daily living.
>
> The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Although the claimant has received various forms of treatment and has been prescribed and has taken appropriate medications for the allegedly disabling symptoms and impairments, which would normally weigh somewhat in the claimant's favor, the medical record reveals that the treatment and medications have been relatively effective in controlling the claimant's symptoms. Since the amended alleged onset date, the claimant indicated that his full body paralysis complaints have become better, he has steadily regained his strength in his arms and legs which were initially decreased at 3 or 4/5 but still reported some weakness especially in a few of his fingers, he has been working with physical therapy weekly and has been improving, and the examination revealed grossly intact motor strength and sensation as well as being alert and interactive with normal affect (Ex. 10F, p. 81-82, 125-126); an examination in December 2023 showed the claimant was neurologically including motor and sensory; and an examination in January 2025 indicated no extremity deformities and no gross neurological deficits (Ex. 10F, p. 145). These discrepancies diminish the persuasiveness of the claimant's subjective complaints and alleged functional limitations.

(A.R. 68–69).

Thereafter, the ALJ explained why the record did "not support more restrictive functional

limitations." (A.R. 69). The ALJ noted that the onset of many of Plaintiff's medical issues followed a November 2022 injury when a tree branch fell on Plaintiff's head, leading to "initial complaints of decreased upper extremity strength and function, balance and gait impairments, and lower motor neural deficits arising from the cervical spine without evidence of any traumatic brain injury, memory, or personality issues/changes." (A.R. 69). However, emergency room imaging findings of the head and cervical spine, at that time, revealed "no musculoskeletal abnormalities, no edema, tenderness to the spine, alert and oriented, intact cranial nerves, normal strength in the lower extremities, and decreased grip strength in the upper extremities," with Plaintiff leaving "against medical advice during procedures and treatment." (A.R. 69).

Thereafter, the ALJ noted that Plaintiff continued to have some complaints, but the record likewise documented improvements.

> In May 2023, the claimant indicated that his full body paralysis complaints have become better, he has steadily regained his strength in his arms and legs which were decreased initially at 3 or 4/5 but still reported some weakness especially in a few of his fingers, he has been working with physical therapy weekly and has been improving, and the examination revealed grossly intact motor strength and sensation as well as being alert and interactive with normal affect (Ex. 10F, p. 81-82, 125-126). An examination in December 2023 showed the claimant was neurologically including motor and sensory; he reported occasional tingling in his feet, the diabetic foot exam revealed skin darkening but was otherwise within normal limits, he was taking Norco for pain, and was agreeable to engage in physical therapy (Ex. 10F, p. 69-76). . . . An examination in January 2025 indicated no extremity deformities and no gross neurological deficits (Ex. 10F, p. 145).

> The claimant underwent physical therapy with noted improvement from his initial complaints in February 2023 (Ex. 1F, p. 65; 9F, p. 28). In July 2023, the claimant requested to be discharged from physical therapy with a pain level of 2 out of 10 and resume later with a new referral (Ex. 9F, p. 23). In November 2024, the claimant reported minimal neck pain with more problematic low back pain with a reported pain level of 3 to 4 out of 10 (Ex. 9F, p. 17).

(A.R. 70).

The ALJ closed by explaining the reasons for not fully crediting Plaintiff's disabling complaints and that instead supported a residual functional capacity (RFC) limiting Plaintiff to

light work with multiple limitations.[1]

> Thus, despite the claimant's subjective complaints, the undersigned finds that the objective medical evidence regarding the claimant's physical impairments supports the above residual functional capacity assessment. The claimant has experienced musculoskeletal pain in the cervical and lumbar spine areas since sustaining an injury in November 2022. The imaging studies confirm the claimant's degenerative changes in the cervical spine and exams have documented the claimant's cervical pain and tenderness, as well as pain and tenderness in the lumbar spine. However, although the claimant presented with 3/5 strength in the upper extremities during his August 2023 consultative examination, he has generally exhibited normal strength and sensation in all extremities, as discussed in detail just above. He has also shown the ability to ambulate without the need for a cane despite bringing such a device to physical examinations, and the consultative examination in June 2024 specifically noted that a cane was not needed. Indeed, the claimant has exhibited a non-antalgic gait. The limited light residual functional capacity nevertheless accounts for the claimant's pain and discomfort in the affected areas as well as the claimant's subjective reports of numbness in the extremities associated with cervical radiculopathy and diabetic neuropathy. It also provides for environmental limitations in consideration of the claimant's intermittent unsteadiness and reports of exacerbation of pain in certain environments, such as the cold.

(A.R. 71).

The ALJ properly relied on the lack of supporting objective medical evidence, as one reason, to discount Plaintiff's allegations that he was disabled. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). As the ALJ noted, at the hearing and in the record, Plaintiff complained of "chronic pain," "difficulty standing or walking and sitting for prolonged periods," and an inability "to lift heavy objects" among other things. (A.R. 68). Some of these complaints were extreme. For example, in his pain

---

[1] The ALJ formulated the following RFC for Plaintiff: "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; occasionally push and/or pull within the weight limits indicated for lifting and carrying; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to vibration and extreme cold; no work near hazards such as high, exposed places or moving mechanical parts; and frequently handle, finger, and feel with the bilateral upper extremities." (A.R. 66–67).

questionnaire, Plaintiff stated that his pain "last[ed] all day and night," (A.R. 233), and at his hearing, described his pain as constant, (A.R. 33). Also at his hearing, Plaintiff testified that he has been using a cane since shortly after his injury, (A.R. 25), would lose his balance if he did not use the cane, (A.R. 25), could walk for about half a block before needing to rest 10 to 15 minutes before being able to walk again (A.R. 34), and could lift two pounds at most (A.R. 34). In light of such disabling complaints, the ALJ properly concluded that "[t]he positive objective clinical and diagnostic findings since the alleged onset date . . . [did] not support more restrictive functional limitations than those assessed [in the RFC]." (A.R. 69).

Moreover, the ALJ properly relied on evidence inconsistent with disability to discount Plaintiff's subjective complaints. For example, although Plaintiff testified to needing a cane, the ALJ noted that Plaintiff had "also shown the ability to ambulate without the need for a cane despite bringing such a device to physical examinations, and the consultative examination in June 2024 specifically noted that a cane was not needed." (A.R. 71). This was a reference to a consultative exam where Dr. Van Kirk noted that Plaintiff "was able to get up and out of the chair, walk around the examination room and get on and off the bench without the need of his cane. So, based upon the objective evidence seen in the clinic today, the cane is not medically necessary." (A.R. 469)[2]; *see Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Additionally, the ALJ properly relied on evidence of improvement following treatment to discount Plaintiff's allegations of "chronic pain." (A.R. 68). Among other things, Plaintiff testified at his hearing to experiencing constant pain causing him to have to lay down for five hours in an eight-hour period. (A.R. 33). However, as the ALJ observed, Plaintiff

> underwent physical therapy with noted improvement from his initial complaints in February 2023 (Ex. 1F, p. 65; 9F, p. 28). In July 2023, the claimant requested to be discharged from physical therapy with a pain level of 2 out of 10 and resume later with a new referral (Ex. 9F, p. 23). In November 2024, the claimant reported minimal neck pain with more problematic low back pain with a reported pain level

---

[2] The Court notes that Dr. Van Kirk also stated as follows: "However, perhaps the claimant would benefit by carrying a collapsible cane with him when he is out and about for even and uneven terrain and for times when he feels unsteady." (A.R. 469).

of 3 to 4 out of 10 (Ex. 9F, p. 17).

(A.R. 70); (A.R. 68 – "[T]he medical record reveals that the treatment and medications have been relatively effective in controlling the claimant's symptoms."); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Lastly, while Plaintiff argues that other evidence could support a different conclusion as to degree of his limitations and the weight given to his subjective testimony, this at most amounts to another "rational interpretation," meaning that "the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (per curiam); *see Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (stating that the Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ"). Notably, the Court has reviewed the records cited by the parties and agrees with the ALJ—who noted both negative and positive findings in the record— that the overall record did not support the full extent of Plaintiff's subjective complaints.

Accordingly, the Court recommends finding that the ALJ provided legally sufficient reasons to not fully credit Plaintiff's subjective complaints.

### B.      Medical Opinions

Plaintiff next argues that the ALJ erred in evaluating various medical opinions. (ECF No. 12, p. 15). He contends that the ALJ improperly addressed the opinions collectively (rather than individually), failed to explain the rationale used to weigh the opinions, and reached conclusions inconsistent with the record. (*Id.* at 15–20).

Defendant argues that the ALJ properly considered each opinion, sufficiently explained the weight given to each opinion, and based those reasons on substantial evidence. (ECF No. 13, pp. 15–18). Further, Defendant generally argues that any error was harmless. (*Id.* at 16).

Because Plaintiff applied for benefits in 2023, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (A.R. 64). These regulations set "supportability" and

"consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

> Under the substantial-evidence standard, we look to the existing administrative record and ask "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, —— U.S. ——, 139 S. Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (cleaned up) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). "Substantial" means "more than a mere scintilla" but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison*, 305 U.S. at 229, 59 S.Ct. 206). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."

*Id.* at 788.

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive'

it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

### 1. Opinions of Doctors Curiel, Lee, and Simpkins

Plaintiff first challenges the following analysis by the ALJ of the opinions of consultative examiner, Dr. Curiel, and state agency reviewing physicians, Dr. Lee and Dr. Simpkins:

> In determining the claimant's residual functional capacity, the undersigned finds that the opinions of the prior administrative medical findings and the consultative internal medicine examiner, Dr. Curiel,[3] are partially persuasive (Ex. 2A, 3A, 5F). These physicians assessed that the claimant was able to perform a range of work at the light exertional level with some differences in the degree of specific function-by-function limitations. Dr. Curiel noted he was morbidly obese, had an unsteady gait, used had a cane but did not use it during the exam and it was not medically necessary, tandem walking was normal, and gait was non-antalgic. *These findings are supported by the review of medical evidence at that time, references to specific findings in the record, and/or the examination of the claimant; however, they are not fully consistent with the overall medical evidence received at the hearing level.* Thus, the undersigned adopts more restrictive limitations based on a combination of the claimant's impairments and the claimant's subjective complaints which warrants additional postural and environmental limits to account for the claimant's pain, cervical radiculopathy, and/or intermittent numbness and unsteadiness.

(ECF No. 12, p. 16) (A.R. 71) (emphasis added).

Plaintiff first argues that the ALJ erred by addressing these opinions collectively in a single paragraph, citing 20 C.F.R. § 416.920c(b)(1), which states as follows:

> Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical

---

[3] The ALJ spelled Dr. Curiel's name as "Curil." The Court has changed it to "Curiel" for consistency.

finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. *We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.*

20 C.F.R. § 416.920c(b)(1) (emphasis added).

Pointing to the last sentence, Plaintiff asserts that "the Commissioner's regulations require that different physicians' medical opinions be evaluated individually." (ECF No. 12, p. 16). However, Plaintiff does not cite any case authority supporting his interpretation of this provision. And the plain language of § 416.920c(b)(1) does not require different medical sources' opinions to be separately analyzed; rather, it provides that the Agency will consider multiple opinions from one "medical source together in a single analysis." Thus, the Court will recommend finding no error on this issue.

Plaintiff next argues that the ALJ did not adequately address the supportability or consistency factors. (ECF No. 12, pp. 16–17). For all three opinions the ALJ provided the following analysis: "These findings are supported by the review of medical evidence at that time, references to specific findings in the record, and/or the examination of the claimant; however, they are not fully consistent with the overall medical evidence received at the hearing level." (A.R. 71). Defendant generally contends that the ALJ's explanation was sufficient and that any error was harmless. (ECF No. 13, p. 16).

However, the Court agrees with Plaintiff that the ALJ failed to properly analyze the supportability and consistency factors. *Schmidt v. O'Malley*, No. 1:23-CV-01240-HBK, 2024 WL 4289605, at *6 (E.D. Cal. Sept. 25, 2024) (citation marks and quotation omitted). The ALJ did not point to any specific evidence and did not do any specific comparison between that evidence that the medical opinions.  Referring generally to the medical evidence does not satisfy the ALJ's duty to explain how it considered the supportability and consistency factors.  *Maldonado v. Bisignano*, No. 1:24-CV-01263-SKO, 2025 WL 1490167, at *7 (E.D. Cal. May 23, 2025) (second alteration in original) (remanding where "the ALJ simply state[d] that the opinion is

10

'overly restrictive and inconsistent [with] the evidence of record,' but [did] not explain how, or elaborate as to what 'evidence in the record'—other than the examinations performed by Dr. Reddy herself—undermine[d] Dr. Reddy's opinion"); *Labryssa v. Kijakazi*, No. 21-CV-04233-BLF, 2022 WL 2833981, at *7 (N.D. Cal. July 20, 2022) (concluding that the ALJ failed to adequately consider medical opinion when "the ALJ failed to engage with Dr. Catlin's assessment in any meaningful sense and made only a passing assessment of the 'supportability' and 'consistency' factors that the Commissioner deems most important").

Accordingly, the Court will recommend that this case be reversed and remanded for further proceedings on this issue.

### 2.  Dr. Matin's Opinion

Plaintiff next challenges the following analysis of the opinion of Dr. Tahmores Matin. (ECF No. 12, p. 17).

> In a physical assessment form dated in May 2023, Tahmores Matin, M.D. assessed functional limitations that would preclude the claimant from working at the level of substantial gainful activity (Ex. 2F). Dr. Matin opined that due to cervical radiculopathy the claimant could perform no lifting, standing, walking, or sitting; he had very limited use of upper extremities; he needs unscheduled breaks; and he would miss more than four days per month. *The undersigned finds that this opinion is not persuasive because it is inconsistent with the objective medical evidence as a whole already discussed above in this decision which includes Dr. Matin's own treatment records.* The overall medical evidence of record showed a generally non-antalgic gait and intact strength and sensation in all extremities. Furthermore, the evidence showed that by May 2023, the claimant indicated that his full body paralysis complaints have become better, he has steadily regained his strength in his arms and legs which were initially decreased at 3 or 4/5 but still reported some weakness especially in a few of his fingers, he has been working with physical therapy weekly and has been improving, and the examination revealed grossly intact motor strength and sensation as well as being alert and interactive with normal affect (Ex. 10F, p. 81-82, 125-126); an examination in December 2023 showed the claimant was neurologically including motor and sensory; and an examination in January 2025 indicated no extremity deformities and no gross neurological deficits (Ex. 10F, p. 145). *Thus, this opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive.*

(A.R. 72) (emphasis added).

As to the supportability factor, Plaintiff argues that "[t]he ALJ did not articulate any finding as to which records were inconsistent with Dr. Matin's opinion [AR 72]." (ECF No. 12, p. 17). Defendant does not directly address this issue; instead it argues that the ALJ's opinion was supported by evidence not cited by the ALJ. (ECF No. 13, pp. 16-17) ("when Plaintiff visited Dr. Matin on May 11, 2023 to request disability paperwork, the doctor documented findings consistent with the records that ALJ cited, not findings supporting the extreme limitations in his opinion. Notably, Dr. Matin provided no supporting explanations in his opinion, and his May 11, 2023, treatment note does not support his opinion either.") (internal citations to record omitted).

However, this Court is "constrained to review the reasons the ALJ asserts," *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citation omitted), and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision," *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted).

Here, ALJ failed to *identify* any treatment record of Dr. Matin's that did not support the opinion, let alone *explain how* the treatment records did not support his opinion. The ALJ's conclusory statements that Dr. Matin's opinion was not supported by "Dr. Matin's own treatment records" and "the other evidence of record," does not adequately explain the ALJ's decision. (A.R. 72); *see Sandra B. v. Kijakaji*, No. 2:20-CV-011359-GJS, 2022 WL 2651981, at *5 (C.D. Cal. July 8, 2022) (remanding where "[t]he ALJ's apparent analysis of the 'supportability' factor [was] limited to the boilerplate statement that Dr. Burnett did not support her opinion with 'medically acceptable clinical or diagnostic findings to support her restrictive assessment.'"); *Mascarenas v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00641-PHX-SPL, 2022 WL 2448279, at *5 (D. Ariz. July 6, 2022) (remanding where "the ALJ did not adequately address the degree to which Dr. Phillips supported his own opinion in his treatment notes or with other objective evidence").[4]

---

[4] Because the ALJ's failure to discuss the supportability factor is sufficient to remand this case, as explained below, the Court need not determine whether the ALJ additionally failed to properly consider the consistency factor in addressing Dr. Matin's opinion. *See Maldonado*, 2025 WL 1490167, at *7 (remanding where the ALJ properly considered the supportability factor but not the consistency factor).

Accordingly, the Court will recommend that this case be reversed and remanded for further proceedings on this issue.

### 3. Harmless Error

As noted above, the Court has concluded that the ALJ failed to properly evaluate the medical opinions at issue.

Defendant generally argues that any error regarding the ALJ's evaluation of medical opinion was harmless: "If the ALJ erred by not further breaking down her analysis of these assessments – which the Commissioner does not concede – it was harmless and Plaintiff fails to show otherwise." (ECF No. 13).

True, a non-disability finding may not be overturned if the error was harmless. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (noting that an ALJ commits harmless error where the error is inconsequential to the determination that a plaintiff is not disabled). However, this Court cannot "confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

As one example, as explained above, the ALJ failed to adequately consider the supportability of Dr. Matin's opinion. If the ALJ had done so, the ALJ may have agreed with Dr. Matin's opined limitations, including that Plaintiff "would miss more than four days per month" from work. (A.R. 72). Here, the vocational expert testified as follows: "And regarding absenteeism, once you go beyond one day per month, unexcused, ongoing and repetitively again, employers become unable to tolerate that." (A.R. 40).

Accordingly, the Court cannot conclude that any error was harmless.

### 4. Remedy

Plaintiff contends that the Court should remand this case to the Agency for the payment of benefits, or, in the alternative, the Court should remand this case for a new hearing. (ECF No. 12, p. 20). Defendant argues that, if this Court does not affirm, remanding for further proceedings is the appropriate remedy. (ECF No. 13, p. 18).

13

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test, with each of the following parts of the test needing to be satisfied to remand for benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, even if all these parts are met, the Court may still remand when "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021. Notably, remand for further proceedings is the "ordinary" requirement whereas a remand for payment of benefits is the rare exception. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

The Court recommends a remand for further proceedings. Further proceedings would be useful to determine the weight to be given to the medical opinions that the ALJ failed to adequately address. *See Maldonado*, No. 2025 WL 1490167, at *8 ("Here, the Court finds that remand for additional proceedings is necessary because the consistency of the medical opinion of Dr. Reddy must be analyzed further before a determination of disability may be made.").

## II.    CONCLUSION AND RECOMMENDATIONS

Accordingly, IT IS RECOMMENDED that:

1.  The decision of the Commissioner of the Social Security Administration be reversed, in part. Specifically, this matter be remanded so that the ALJ may properly evaluate the opinions of Doctors Curiel, Lee, Simpkins, and Matin, specifically considering their supportability and consistency.

2.  The Clerk of Court be directed to enter judgment in favor of Plaintiff and to close this case.

These findings and recommendations are submitted to the United States District Judge

14

assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 17, 2026**                     /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE

15